UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES RENO** | **CIVIL ACTION** |
| **VERSUS** | **NO: 22-1991** |
| **ANCO INSULATIONS, INC., ET AL.** | **SECTION: T(1)** |

## ORDER

Before the Court are several motions filed by Defendant, Uniroyal Holding ("Holding") and Plaintiff, Certain Underwriters of Lloyd's of London ("Underwriters"). Both parties have submitted oppositions and replies to the subject motions. Having considered the parties' arguments, the record, and the applicable law, the Court addresses each of the pending motions below.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about October 4, 2001, Holding and Underwriters entered into a confidential settlement agreement ("2001 Agreement").[1] Contemplating current and future losses arising out of "certain asbestos-related claims," the 2001 Agreement purportedly requires Holding to defend, indemnify, and hold harmless the Underwriters for the claims asserted under certain policies and for certain injuries.[2] The 2001 Agreement was purported to have been negotiated and entered into

---

[1] R. Doc. 4-5.
[2] R. Docs. 4-2, 4-5. The Contract submitted to this Court is not complete, containing only the first and last page of the document.

1

in New Jersey.³ The 2001 Agreement is "to be governed by and shall be construed in accordance with the laws of the State of New Jersey."⁴

On April 28, 2020, James Reno filed a Petition for Damages in state court for injuries related to purported asbestos exposure.⁵ In that Petition, Reno named several defendants including Uniroyal, Inc.⁶ Reno later dismissed Uniroyal, Inc. voluntarily.⁷ Following that dismissal, Reno amended his Petition naming Underwriters as defendants in their capacity as an insurer of Holding.⁸ Underwriters were served in July 2021 and subsequently made a demand to Holding to comply with the 2001 Agreement.⁹ Holding rejected that demand.¹⁰

On January 28, 2022, Underwriters filed a motion for leave to file a third party demand against Holding in state court, which was later granted.¹¹ The third party demand asks the Court to determine the application of a 2001 Agreement to the Reno case.¹² This was the first time Holding had ever been named as a defendant in relation to the Reno case.¹³ In the interim, Underwriters reached a settlement with Reno in mediation.¹⁴ Underwriters moved to sever their third party demand, which was granted by an order entered on May 9, 2022.¹⁵ The remainder of the state court action was dismissed.¹⁶ Holding was then served on May 31, 2022.¹⁷

---

³ R. Doc. 4.
⁴ R. Doc. 4-5.
⁵ R. Doc. 1-1. Mr. Reno subsequently passed away and his wife and son were substituted as plaintiffs in the state court matter.
⁶ *Id*.
⁷ R. Docs. 1-2, 4.
⁸ R. Doc. 1-2.
⁹ R. Doc. 21-1.
¹⁰ *Id*.
¹¹ R. Doc. 1-3.
¹² R. Doc. 3-5.
¹³ R. Doc. 1, 3-1.
¹⁴ R. Docs. 1, 21-1.
¹⁵ R. Docs. 1, 1-5.
¹⁶ R. Docs. 1, 4.
¹⁷ R. Docs. 1, 1-6.

Holding removed the third party action to this Court on June 29, 2022, invoking diversity jurisdiction.[18] On June 30, 2022, Holding filed two motions: (1) a *Motion to Dismiss* under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim;[19] and (2) a *Motion to Transfer Venue*.[20] Underwriters subsequently filed a *Motion to Continue Submission Date* related to both pending motions filed by Holding,[21] but filed oppositions to both motions timely.[22] Underwriters then filed a *Motion to Remand* this matter back to state court claiming Holding's removal was untimely.[23] Holding has also filed a *Motion to Limit State Court Records to be Filed and For Extension of Time*.[24]

## LAW AND ANALYSIS

### I. Motion to Continue Submission Dates

With regard to Underwriters' *Motion to Continue Submission Date*, the Underwriters submitted oppositions to the subject motions and the issues are now fully briefed for consideration by this Court. However, Underwriters are correct that the *Motion to Remand* should be taken up by the Court before ruling on the other motions. In this instance, all five pending motions will be submitted to the Court on the same date. Accordingly, the Motion is GRANTED, and the submission date for all five Motions, including the Motion to Remand, is continued to and set for March 29, 2023.[25]

---

[18] R. Doc. 1.
[19] R. Doc. 3.
[20] R. Doc. 4.
[21] R. Doc. 8.
[22] R. Docs. 9, 10.
[23] R. Doc. 21.
[24] R. Doc. 22.
[25] *Motion to Dismiss for Failure to State a Claim*, R. Doc. 3; *Motion to Transfer Case*, R. Doc. 4; *Motion to Continue Submission Dates*, R. Doc. 8; *Motion to Remand*, R. Doc. 21; and *Motion to Limit State Court Records and for Extension of Time*, R. Doc. 22.

II.  **Motion to Remand**

Removal procedures for civil actions are governed by 28 U.S.C. § 1446. Under §1446(b)(1), defendants seeking to remove a case from state court to federal court must do so within 30 days of the initial pleading setting forth a claim for relief. If a case is not instantly removable but later becomes removable, § 1446(b)(3) allows removal within 30 days after receipt of "a copy of an amended pleading, motion, order or other paper which it may first be ascertained that the case is one which is or has become removable." When a case is not initially removable, but it becomes removable under 28 U.S.C. § 1446(b)(3), 28 U.S.C. § 1446(c)(1) imposes a deadline of one year from commencement of the action to remove it, with an exception to that time limitation allowed only if the plaintiff is found to be in bad faith.[26]

However, where a third-party demand has been severed from the original action, courts in this circuit and district have recognized a third-party defendant as a "defendant" within the meaning of § 1441(a).[27] Removal by third-party defendants of third-party demands may be permissible after severance from the main demand or after they have been resolved separate and apart from the main demand, when the original plaintiff's choice of forum is not at issue, and thus not infringed upon, and the third-party defendant can properly assert diversity jurisdiction had the third-party demand been filed as a separate matter.[28]

In both *Central of Georgia Ry. Co.* and *Johns, Pendleton & Associates*, "the main demand was resolved separate and apart from the third-party complaint."[29] Likewise, in the instant case, the state court severed the underlying Reno case from the third-party demand by Underwriters own

---

[26] 28 U.S.C. § 1446(c)(1).
[27] *Central of Georgia Ry. Co. v. Reigel Textile Corp.*, 426 F.2d 935, 937-938 (5th Cir. 1970); *Johns, Pendleton & Associates v. Miranda, Warwick & Milazzo*, No. 02-1486, 2002 WL 31001838 (E.D. La. Sept. 4, 2002) (applying and following *Central of Georgia Ry. Co.*). *See also Loyola Univ. New Orleans v. Mapp Constr., Inc.*, 2010 WL 11538698, *2 n.1 (E.D. La. May 6, 2010) (distinguishing *Central of Georgia Ry. Co.*).
[28] *Johns, Pendleton &* Associates, 2002 WL 31001838, *3-4.
[29] *Id.*

4

motion and ultimately dismissed the Reno case. Therefore, the third-party demand became a separate action, initiated by its own filing on January 28, 2022. After severance in early May 2022, Holding was finally served with the third-party demand on May 31, 2022. Under § 1446(b)(1), Holding, as a "defendant" pursuant to § 1441(a), then had thirty days to remove this matter to federal court. Holding fulfilled this requirement on June 29, 2022. The removal is, therefore, timely. Because the removal was timely, the *Motion to Remand* filed by Underwriters is **DENIED.**

### III.  Motion to Transfer Venue

#### A.  Propriety of Each Venue

Before addressing the requested transfer, the Court will address the propriety of both this venue and the proposed venue. Venue for a civil action is proper in a judicial district where any defendant resides if all defendants are residents of the state.[30] For the purposes of venue, entities are deemed to reside in any judicial district where they are subject to personal jurisdiction for the action.[31] Personal jurisdiction may be either general or specific.[32] Corporations are subject to general jurisdiction in the place of their incorporation and principal place of business.[33] Holding is therefore subject to general personal jurisdiction in New Jersey as its place of incorporation. To this fact there is no argument. Holding is not subject to general personal jurisdiction in this Court.

With regard to specific personal jurisdiction, venue is proper in judicial districts where "a substantial part of the events or omissions giving rise to the claim occurred."[34] As discussed above, this matter is a contract dispute. In contract disputes, to determine where the claim arose courts evaluate "where the contract was negotiated or executed, where the contract was to be performed,

---

[30] 28 U.S.C. § 1391(b)(1).
[31] 28 U.S.C. § 1391(c)(2).
[32] *Whitehead v. ABB Lummus Global BV*, 235 Fed. App'x 241, 242 (5th Cir. 2007) (internal citations omitted).
[33] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).
[34] 28 U.S.C. § 1391(b)(2).

5

and where the alleged breach occurred."[35] Considering those factors, this matter is also properly addressed in a New Jersey venue. The contract at issue has no connection with this District. Instead, it was negotiated and formed in New Jersey and is by its own terms subject to New Jersey law.

Underwriters do not dispute that New Jersey is a proper venue for this action. Instead, they argue that the underlying Reno case ties this contract dispute to venue in Louisiana. This Court disagrees. The Reno case has been resolved and the only issue in this third-party action deals with a purported breach of the 2001 Agreement, a contract confected in New Jersey and subject to New Jersey law by its own terms. This Court does not have personal jurisdiction over Holding in this contract dispute. New Jersey is the proper venue for this matter, as is supported by the analysis of the public and private interest factors below.

### B. The Requested Transfer

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[36] Transfer of venue is warranted upon a showing of "good cause" by the moving party.[37] That good cause standard is met when the movant satisfies the statutory requirements and clearly demonstrates the transfer is, indeed, "for the convenience of the parties and witnesses, in the interest of justice."[38]

In evaluating whether the good cause is met, courts consider four private interest factors and four public interest factors.[39] The private interest factors are: "(1) the relative ease of access

---

[35] *Ross v. Digiola*, 2012 WL 72703 at *4 (E.D. La. Jan. 10, 2012) (citing Wright & Miller, 14D Federal Practice & Procedure § 3806.1); *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 438 (D.N.J. 2015).
[36] 28 U.S.C. § 1404(a).
[37] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*).
[38] *Id*.
[39] *Id*.

to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[40] The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[41] No single factor is dispositive; all factors must be weighed together.[42] When the movant can demonstrate transfer is clearly more convenient, the good cause standard is met, and "the district court should therefore grant the transfer."[43]

As for the private interest factors, the Court finds they support transfer of venue to New Jersey. First, the sources of proof are more readily available in New Jersey. Even a slight inconvenience of transporting documents or other evidence weighs in favor of transfer.[44] Both parties are located in the Northeast region of the United States. Holding is incorporated in New Jersey with a principal place of business in Connecticut.[45] Underwriters are alleged to be incorporated/domiciled in New York.[46] Holding maintains its documents and records in New Jersey, including those pertaining to the 2001 Agreement.[47] The issues related to contract construction are connected to New Jersey not Louisiana. This factor, therefore, favors transfer.

The second and third private interest factors deal with witness availability and compulsory process. Each party agrees that neither the New Jersey nor Louisiana court will have subpoena

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *In re Roadmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).
[45] R. Doc. 4-1, 4-4.
[46] R. Doc. 1, 4-1.
[47] R. Doc. 4-1.

power to secure the attendance of all potential witnesses. It does appear that since the 2001 Agreement was drafted in or around New Jersey, the New Jersey court will have access to more witnesses to the contract construction than Louisiana. There is no indication that any live witness from Louisiana will be needed to testify. By contrast, the witnesses related to the contract's construction will incur less costs and inconvenience traveling within the Northeast region where both entities have their principle places of business. These factors together favor transfer to New Jersey.

Finally, the fourth factor deals with the practicalities of litigation. As discussed above, this factor weighs in favor of transfer. Both parties are domiciled in the Northeast, and the witnesses to contract construction and documents needed for proper contract interpretation are available in the Northeast. Therefore, the private interest factors weigh in favor of transferring this matter to a New Jersey venue.

Turning to the public interest factors, the Court first addresses the administrative difficulties posed by transferring this matter to New Jersey. The parties concede the New Jersey courts are more congested than those of this District. As such, this factor does not weigh in favor of transfer to New Jersey. Next, with regard to local interest, the Court examines whether the local communities in New Jersey and Louisiana have a stake in the resolution of this matter.[48] Underwriters argue the Reno case gives rise to a local interest in this contract dispute. However, once a third-party demand has been severed from the underlying case, or the underlying plaintiff dismisses the case, the plaintiff no longer has an interest in the third party matter being resolved within his choice of forum.[49] At this juncture this third-party dispute has been severed from the underlying Reno case, and that case has already been dismissed. Reno no longer has any interest

---

[48] *See Volkswagen*, 545 F.3d at 318.
[49] *Johns, Pendleton & Assocs. v. Miranda, Warwick & Milazzo*, 2002 WL 31001838, at *3 (E.D. La. Sept. 4, 2002).

in the resolution of this matter. To the contrary, New Jersey has an interest in adjudicating contractual disputes arising out of their jurisdiction. This factor favors transfer.

The third and fourth public interest factors relate to application of laws governing the dispute. The contract at issue contains a clause binding disputes arising from it to be "governed by" and "construed in accordance" with New Jersey law.[50] While this Court can apply New Jersey laws to cases before it, New Jersey is a proper venue for this dispute and the court in New Jersey is the most familiar court with New Jersey law and its application. These two factors each favor transfer.

Therefore, the public and private interests largely weigh in favor of transfer to New Jersey, which the parties agree is a proper venue. This Court, by contrast, does not have personal jurisdiction over Holding. Accordingly, the *Motion to Transfer Venue* is **GRANTED.**

IV. **Other Pending Motions**

Finding that venue is proper in New Jersey and that this matter should be transferred to the New Jersey court, the *Motion to Dismiss for Failure to State a Claim* and the *Motion to Limit State Court Records to be Filed and For Extension of Time* will be dismissed without prejudice to being refiled.

**CONCLUSION**

For the above reasons,

**IT IS ORDERED** that the *Motion to Continue Submission Dates* is GRANTED[51] and the submission date for all five pending motions[52] is continued to and reset for March 29, 2023.

**IT IS FURTHER ORDERED** that the *Motion to Remand* is **DENIED.**[53]

---

[50] R. Doc. 4-5.
[51] R. Doc. 8.
[52] R. Docs. 3, 4, 8, 21, and 22.
[53] R. Doc. 21.

**IT IS FURTHER ORDERED** that the *Motion to Dismiss for Failure to State a Claim* and the *Motion to Limit State Court Records to be Filed and For Extension of Time* are DISMISSED WITHOUT PREJUDICE.[54]

**IT IS FURTHER ORDERED** that the *Motion to Transfer Venue* is **GRANTED**[55] and that this matter be and hereby is transferred to the District Court for New Jersey.

New Orleans, Louisiana this 30th day of March, 2023.

_____
Hon. Greg Gerard Guidry
United States District Judge

---

[54] R. Docs. 3 and 22.
[55] R. Doc. 4.